

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black Apple iPhone<br>Seized as FP&F No. 2022565400016406 Item 0001<br>("Target Device") | Case No. '22 MJ03518 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the    Southern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, U.S.C. § 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Giancarlo Lugo, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Giancarlo Lugo, Border Patrol Agent, U.S. Border Patrol
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by    telephone    *(specify reliable electronic means)*.

Date: 09/27/2022

*Judge's signature*

City and state: San Diego, California    HON. Andrew G. Schopler, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Giancarlo Lugo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

> Black Apple iPhone
> Seized as FP&F No. 2022565400016406 Item 0001
> **("Target Device")**

**("Target Device")**, as further described in Attachment A, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant related to the investigation of Hilda SALAS-Urioste for transporting and moving illegal aliens within the United States. The **Target Device** is currently in the custody of Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not purport to set forth all my knowledge of the investigation into this matter. Dates and times are approximate.

## TRAINING AND EXPERIENCE

4. I have been employed by the USBP since 2008 and am currently assigned to the San Diego Sector Prosecutions Unit. I graduated from the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of

1

Criminal Procedure and have been a Federal Law Enforcement Officer for fourteen years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

5. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit,

2

providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

8. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by phone calls, social media, or messaging applications when contact is lost with the driver after an apprehension has occurred.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in human smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications,

3

photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

10. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States, and transport aliens inside the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

11. On September 23, 2022, Border Patrol Agents R. Rebortura and C. Washington were performing assigned duties in the Chula Vista Border Patrol station's

4

area of responsibility. At approximately 4:20 AM, Department of Defense Personnel, operating a Remote Video Surveillance System (RVSS), advised via agency radio that he observed three individuals get into a sedan near the 6.5 Mile Marker on Otay Lakes Road go westbound. Agent Rebortura responded and observed a single white Acura ILX driving westbound on Otay Lakes Road and Rutgers Avenue. Agent Rebortura activated his lights and sirens and attempted to conduct a vehicle stop on the Acura at the intersection of Otay Lakes Road and La Media Road. The vehicle yielded approximately 200 yards west of the intersection of Otay Lakes Road and La Media Road. This area is approximately six miles north of the United States/Mexico International Boundary and approximately three miles west of the Otay Mesa, California, Port of Entry.

12. As Agent Rebortura approached the Acura, he observed a male driver later identified as defendant, Erik MONDRAGON-Lara and female front passenger, later identified as Hilda SALAS-Urioste. Agent Rebortura also observed three individuals in the rear seat. Agent Rebortura identified himself as a Border Patrol Agent and conducted an immigration inspection. All three rear passengers, later identified as material witnesses, Francisco ESPINOZA Garcia, Rey David URIOSTE Atanacio and Juan Carlos URIOSTE-Mendiola, stated that they are citizens of Mexico without any immigration documents allowing them to enter or remain in the United States legally. At approximately 4:28 AM, Agent Rebortura placed ESPINOZA, URIOSTE Atanacio and URIOSTE-Mendiola under arrest. The driver MONDRAGON stated that he was a citizen of Mexico with immigration documents pending for a visa. At approximately 4:29 AM, Agent Rebortura placed MONDRAGON and SALAS under arrest.

13. At the time of arrest, a black Apple iPhone (**Target Device**), was found inside SALAS' purse. SALAS claimed ownership of the black Apple iPhone (**Target Device**). This device was subsequently seized.

14. MONDRAGON was advised of his Miranda Rights. MONDRAGON stated he understood his rights and was willing to speak without the presence of a lawyer.

5

1  MONDRAGON verified that he has a pending asylum/non-deportation case.
2  MONDRAGON stated that his United States citizen wife has not filed a petition on his
3  behalf. MONDRAGON claimed this was his third arrest by Border Patrol for smuggling
4  illegal aliens. MONDRAGON stated that he received a telephone call from SALAS today
5  at approximately 3:00 AM, requesting his assistance to pick-up a relative who she
6  identified as her cousin. MONDRAGON stated that the front seat passenger explained to
7  him that her cousin illegally entered the United States and needed a ride. MONDRAGON
8  stated he agreed to drive her and SALAS offered to fill his vehicle's gas tank for the trip.
9  MONDRAGON stated that SALAS began to receive text messages and pin drop locations
10 from her cousin while they traveled to an area near a lake. MONDRAGON stated that he
11 arrived at the location and saw three individuals running from the bushes and get in his
12 vehicle. MONDRAGON stated that SALAS had asked him to transport her cousin and the
13 other individuals to her home in Escondido, California. MONDRAGON stated that
14 SALAS informed him that upon arrival at her home they could figure out how much money
15 the three individuals would pay him for the ride.

16       15. Material witnesses Francisco ESPINOZA Garcia, Rey David URIOSTE
17 Atanacio and Juan Carlos URIOSTE-Mendiola stated they are citizens and nationals of
18 Mexico without proper immigration documents allowing them to enter or remain in the
19 United States legally. The material witnesses stated that they did not make smuggling
20 arrangements to pay prior to entering the United States. ESPINOZA, URIOSTE Atanacio
21 and URIOSTE-Mendiola each stated that they climbed over the border fence to cross into
22 the United States. URIOSTE-Mendiola stated that once they arrived at a hiding spot near
23 the pick-up location, he placed a phone call to MONDRAGON. Each individual stated they
24 got into the back seat of the vehicle once it arrived. All three material witnesses were shown
25 a photographic line-up. URIOSTE-Mendiola was able to identify the defendant
26 MONDRAGON as the driver of the vehicle.

16. Based upon my experience and training, consultation with other law enforcement officers experienced in human trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Device**. In light of the above facts and my experience and training, there is probable cause to believe that Hilda SALAS-Urioste was using the **Target Device** to communicate with others to further illegal entry into the United States. Based on my training and experience, it is also not unusual for individuals, such as SALAS to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Device** for data beginning on **August 24, 2022, through September 24, 2022**.

## METHODOLOGY

17. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of

7

the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, a case agent familiar with the investigation will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days from the date this warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

20. Law enforcement previously obtained a warrant Target Device (22MJ3502) signed by the Honorable Andrew G. Schopler on September 26, 2022. However, due to technical difficulties and incorrect identification numbers for the Target Device in the previous warrant, the attempt was never performed. Agents are seeking authorization to make another attempt.

## CONCLUSION

21. Based on the facts and information set forth above, there is probable cause to believe that a search of the **Target Device** will yield evidence of alien smuggling violation of Title 8, United States Code, Sections 1324.

22. Because the **Target Device** was seized at the time of SALAS' arrest and has been securely stored since that time, there is probable cause to believe that such evidence continues to exist on **Target Device**. As stated above, I believe that the appropriate date range for this search is from **August 24, 2022, through September 24, 2022.**

23. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachments A and seized the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Giancarlo Lugo
Border Patrol Agent

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this __27th__ day of September 2022.

Hon. Andrew G. Schopler
United States Magistrate Judge

9

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

Black Apple iPhone
Seized as FP&F No. 2022565400016406 Item 0001
(**"Target Device"**)

**Target Device** is currently in the custody of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, San Diego Sector.

## ATTACHMENT B

### ITEM TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **August 24, 2022, through September 24, 2022**:

a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which is evidence of violations of Title 8, United States Code, Section 1324.

11